MELINDA HAAG (CABN 132612)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

AARON D. WEGNER (CABN 243809)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6831
   Facsimile: (415) 436-6982
   E-Mail: aaron.wegner@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JOEL CEJA MENDOZA, <br><br> Defendant. | No. CR 09-0103 CRB <br><br> UNITED STATES SENTENCING MEMORANDUM <br><br> Date: September 29, 2010 <br> Time: 2:15 p.m. <br> Court: Hon. Charles R. Breyer |

     On June 23, 2010, the defendant pled guilty to Count One of the Indictment charging him with knowingly and intentionally conspiring to possess with intent to distribute and to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A). According to the terms of the defendant's plea agreement, the parties agreed that the appropriate sentence in this case is between 70 and 87 months.

//

On September 3, 2010, the government received the final Presentence Report ("PSR") in this matter. The PSR recommended a low-end Guideline sentence of 70 months. For the reasons detailed below, the government disagrees with the PSR's recommended sentence and believes that a sentence of 87 months is appropriate in this case.

## BACKGROUND

The government's long term investigation into the Rafael Franco Perez's drug organization began in the fall of 2006 and concluded with nine individuals, including the defendant, being arrested on February 4, 2009. The investigation revealed that the Perez organization imported drugs into the United States through the Mexican border and distributed kilogram-quantities of controlled substances, in particular crystal methamphetamine and heroin, in and around the San Francisco Bay Area.

In early November of 2008, based on interceptions from a federally authorized wiretap on Perez's cellular telephone, agents identified a shipment of crystal methamphetamine being sent from Mexico to Perez in the Bay Area. On November 17, 2008, Perez was intercepted giving directions to the defendant, who was driving a truck containing the methamphetamine. A short time later, Perez was intercepted giving directions to co-defendant Vincente Franco Escalera, whose task was to meet the defendant and help unload the methamphetamine.

As revealed by the wiretap interceptions, the original plan called for the methamphetamine to be unloaded at Escalera's home. However, because of the concern that Escalera's home did not have an enclosed garage, Perez instructed the defendant and Escalera to unload the methamphetamine at the defendant's home in Los Banos, California. A short time later, the California Highway Patrol pulled over the defendant and discovered over 14 pounds of pure methamphetamine stored in a secret compartment in the truck's transmission. Perez was later intercepted commenting to Escalera, "I hope they don't take him [the defendant] to the station, because if so, that's going to be it for that guy."

On February 4, 2009, the defendant was arrested and a federal search warrant was executed on his home in Los Banos, California.

## LEGAL STANDARD

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct Guidelines range. *Id*.

Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350 (2007). The Guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the Guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id*.

## GUIDELINES CALCULATION

The government encourages the Court to accept the plea agreement signed by the parties, including the Guidelines calculation contained therein.[1] While the defendant was responsible for the transportation and delivery of a large amount of methamphetamine, his role in the drug trafficking organization under investigation was quite small, and to the best of the government's knowledge, was limited to the single delivery that was charged in this case. Hence, the parties' plea agreement grants the defendant a minor role reduction pursuant to U.S.S.G. § 3B1.2. The probation officer's findings support this conclusion and his report characterizes the defendant's role as "limited." (PSR at ¶ 27).

## DISCUSSION

Based on his involvement in the charged conspiracy, the defendant and the Probation Office believe that a low-end Guideline sentence of 70 months is appropriate in this case.

---

[1] The parties, along with the probation officer, agree that the defendant's adjusted offense level is 27 and his criminal history category is I. Accordingly, his sentencing Guidelines are 70-87 months imprisonment.

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB         -3-

The PSR states that "the nature, circumstances, and seriousness of this offense are unremarkable." (PSR Sent. Rec. at pg. 1.) However, the government believes that the amount of methamphetamine involved in this offense was actually quite remarkable and the defendant's involvement in the crime warrants the Court imposing a high-end Guidelines sentence of 87 months imprisonment.

In deciding an appropriate sentence for the defendant, the Court should consider that the defendant played an important role in the transportation of over 14 pounds of pure methamphetamine from Mexico into the United States. Based on wiretap recordings and surveillance, the defendant's role in the transaction was two-fold: 1) to drive the truck containing the methamphetamine from Mexico into the United States; and 2) to help unload the methamphetamine. As an initial matter, 14 pounds of pure methamphetamine is a staggering amount of drugs. According to the agents involved in this investigation, the street value of the methamphetamine in the defendant's truck was approximately $250,000. The sole fact that the defendant was tasked with transporting such a large amount of drugs demonstrates the level of trust and responsibility that was given to him by the organization, even if it was only on this single occasion.

Furthermore, the Court should consider that the defendant's truck was modified with a sophisticated trap compartment involving the transmission. Although there is no evidence that the defendant was involved in the construction of the trap compartment or the loading of the methamphetamine into the compartment, the defendant admitted that he knew that the transmission had been modified and contained drugs. In addition, in the bed of the defendant's truck, agents found transmission fluid, a funnel, black tubing, and a socket that fit the truck's transmission casing. This evidence demonstrates that the defendant was instructed on the operational details of the trap compartment and that he planned to unload the methamphetamine from the truck's transmission. In addition, the defendant further involved himself in the conspiracy by agreeing to unload the methamphetamine at his house in Los Banos. In light of this evidence, a low-end Guideline sentence is simply inappropriate.

Moreover, in concluding that a low-end Guideline sentence of 70 months is appropriate in this case, the PSR notes that "[t]his is defendant's first conviction and he was not a target of the extensive Perez investigation." (PSR Sent. Rec. at pg. 1.)  In essence, the PSR is recommending a low-end Guideline sentence based on the defendant's limited role in the conspiracy and his lack of prior criminal history.  However, the defendant's plea agreement has already accounted for each of these factors.  Specifically, the defendant's plea agreement calculates the Guidelines by placing the defendant in criminal history I, granting him a safety-valve reduction pursuant to U.S.S.G. § 2D1.1, and granting him a minor-role reduction pursuant to U.S.S.G. § 3B1.2.  Therefore, if the Court accepts the plea agreement negotiated by the parties, it would essentially result in double counting for the Court to consider these particular factors again.  For example, if the defendant's plea agreement had not provided for a minor-role reduction pursuant to U.S.S.G. § 3B1.2, the defendant's adjusted offense level would have been 33 with a resulting Guidelines range of 135-168 months.  This is a drastic difference from the Guidelines range (70-87 months) that the defendant faces pursuant to the plea agreement  Therefore, it is inappropriate for the defendant to argue that he deserves a low-end Guideline sentence based on his limited role in the Perez organization or his lack of criminal history.

## CONCLUSION

In sum, the plea agreement (and the resulting Guidelines calculation) in this case took into consideration that the defendant: 1) had no criminal convictions; 2) was not a target of the Perez investigation prior to his arrest; and 3) played a limited role in the Perez organization. Within that Guidelines range of 70-87 months, the Court must decide the appropriate sentence for the defendant.  In light of the large amount of methamphetamine involved in the transaction and the defendant's important role in transporting the drugs, the government believes that only a high-end Guideline sentence of 87 months will adequately address the seriousness of this offense, promote respect for the law, provide just punishment, protect the community, deter the defendant from future criminal conduct, and deter other individuals tempted to engage in large-

scale narcotics trafficking. Therefore, based on the foregoing, the Government recommends a sentence of 87 months imprisonment, five years of supervised release (with conditions to be fixed by the Court), and a $100 special assessment.

DATED: September 21, 2010

                                              Respectfully submitted,

                                              MELINDA HAAG
                                              United States Attorney

                                                  /s/
                                              AARON D. WEGNER
                                              Assistant United States Attorney